IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In Re:

STEVEN LEE SORENSEN,
TINA L. SORENSEN,

Debtor(s)

Case No. 11-bk-33448

Chapter 7

---

**AFFIDAVIT OF STEVEN LEE SORENSEN IN SUPPORT OF
DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 524 AND 105 FOR VIOLATIONS
OF THE DISCHARGE INJUNCTION AND FED. R. BANKR. P. 9020 SEEKING
SANCTIONS FOR CIVIL CONTEMPT AGAINST
KEITH A. SCHALLENKAMP, PAULSON LAW FIRM PLLC AND
EICH LAW OFFICE, PROF. LLC**

---

**STATE OF ILLINOIS** )
: ss
**COUNTY OF WILL** )

Steven Lee Sorensen, being first duly sworn upon oath, deposes and states as follows:

1. I am a debtor in the above captioned Chapter 7 and have personal knowledge of the facts contained in this affidavit.

2. On October 14, 2009, I filed a wrongful termination lawsuit against my former employer, MF Global ("MF Global").

3. Prior to filing my wrongful termination lawsuit, Keith Schallenkamp ("Keith") and I discussed my wrongful termination lawsuit by phone, and I sent him a copy of the proposed lawsuit against MF Global. Keith wanted to invest in the lawsuit and wanted to loan me money in exchange for a stake in any recovery I received from the lawsuit. Keith started sending money to me in July 2009.

1

4. At that time, Keith was in the military with a Texas address.

5. On June 27, 2011, my wrongful termination lawsuit was dismissed and I appealed the dismissal. MF Global later filed for Chapter 11, and there was no chance of recovery.

6. On August 16, 2011, my wife, Tina, and I filed for Chapter 7 bankruptcy.

7. Keith was listed as an unsecured creditor in our bankruptcy. I estimated the amount that Keith had loaned me to be approximately $66,000.00.

8. Keith received notice of our Chapter 7 filing at his last known address in Texas.

9. Approximately a week or two after the bankruptcy notices were sent to the creditors, Keith called me. He was furious about being listed in our bankruptcy. I explained that we had to list everyone to whom we owed money.

10. Keith did not file anything in our bankruptcy.

11. Tina and I received a bankruptcy discharge on July 31, 2012.

12. Keith received notice of our Chapter 7 discharge.

13. Between approximately July 2009 and the date we filed Chapter 7, Keith had loaned me $72,084.00.

14. Keith loaned me $3,020.00 after our bankruptcy was filed - from September 2011 to January 2012.

15. From June 2014 to April 2015, I made payments to Keith totaling $3,800.00 for repayment of the $3,020.00, plus interest. After making the first few payments to Keith, Keith called and asked me to mail payments to a Mankato, Minnesota address where his girlfriend and her daughter living at the time. That was the first knowledge I had of a Minnesota address for Keith. I complied with Keith's request.

16. Keith ignored our bankruptcy discharge, and on June 16, 2017, he filed a civil lawsuit against Tina and me, and my mother, Shirley Schallenkamp (Keith's stepmother), in the County

2

Document    Page 3 of 7

of Sibley, State of Minnesota seeking an amount in excess of $50,000.00, and attorney fees. Keith specifically was attempting to collect the $72,084.00 prepetition loan.

17. Attorney Jon E. Paulson, Paulson Law Firm, PLLC, represented Keith in the Minnesota lawsuit.

18. When the Minnesota lawsuit was filed, Keith and his attorney, Mr. Paulson, knew of our Chapter 7 bankruptcy and discharge.

19. I retained Joseph A. Gangi, Farrish Johnson Law Office, to represent us in the Minnesota lawsuit.

20. On or about March 13, 2018, the Minnesota lawsuit was dismissed for lack of jurisdiction. On April 10, 2018, the Court entered a Judgment against Keith in the amount of $1,060.00 for additional legal fees and costs we incurred as a result of Keith's late filing of a changed document.

21. Keith again ignored our Chapter 7 discharge and on July 29, 2018, Keith filed another civil lawsuit against Tina and me, and my mother, Shirley Schallenkamp. This second lawsuit was filed in the County of McCook, State of South Dakota. Keith is seeking a judgment for damages against us in the amount of $71,304.00 ($75,104.00 total loaned, less $3,800.00 paid), plus interest, a judgment for fraud in an amount to be determined at trial, and attorney fees and costs.

22. The South Dakota lawsuit is basically the same as the Minnesota lawsuit filed by Keith against us and dismissed only a few months prior to Keith's filing of the South Dakota lawsuit. As in the Minnesota lawsuit, Keith is specifically attempting to collect the $72,084.00 prepetition loan.

23. Keith is represented in the South Dakota lawsuit by attorney, Robin M. Eich, Eich Law Office, Prof. LLC. The South Dakota lawsuit is currently an active case.

24. When the South Dakota lawsuit was filed, Keith and his attorney, Ms. Eich, knew of our Chapter 7 bankruptcy and discharge.

25. In or about December 2018, I met with attorney, Christina Banyon, CKB Lawyers, regarding Keith's lawsuits for the collection of the debt that was discharged in our Chapter 7.

26. In December 2018, Ms. Banyon sent a letter to Ms. Eich regarding Keith's continued attempts to collect the prepetition debt in violation of the Chapter 7 bankruptcy discharge, along with copies of our bankruptcy notice and discharge order.

27. Despite Ms. Banyon's efforts, Keith and Ms. Eich proceeded with the South Dakota lawsuit.

28. Keith has actively pursued collection of the discharged debt through the Minnesota and South Dakota lawsuits.

29. In addition to the lawsuits, Keith has also sent numerous threatening emails, text messages and has attempted harassing phone calls.

30. I was required to retain counsel to defend us in the Minnesota and South Dakota lawsuits filed by Keith and his attorneys.

42. I sought the assistance of counsel, Christina Banyon, in an attempt to stop Keith's collection efforts of the discharged debt.

43. When her efforts failed, Ms. Banyon referred us to Sulaiman Law Group to bring this action against Keith and his attorneys.

44. The collection practices of Keith and his attorneys have caused Tina and me to suffer and continue to suffer emotional distress, mental anguish, and anxiety.

45. Keith attempted numerous harassing phone calls and sent numerous emails and text messages, including a group text message sent to Tina and me that also included our minor daughter's cell phone number, which was very upsetting to our daughter.

46. The global text message was sent after we were represented by counsel in the Minnesota lawsuit.

47. Keith's numerous emails, text messages, and attempted harassing phone calls, have severely disrupted our daily lives.

48. Keith's filing of two identical collection lawsuits in Minnesota and South Dakota has disrupted our daily lives since June 2017.

49. Keith's abusive text messages and emails to us and to our family members continuing even after the filing of the Minnesota lawsuit in June 2017 and after we were represented by counsel, continued to disrupt our daily lives and caused us to suffer emotional distress, mental anguish, and anxiety.

50. We have been unduly inconvenienced and harassed by Keith's unlawful attempts to collect a discharged debt for over five years, including attempts to collect the discharged debt through state court litigation for almost two years.

51. We have been unduly inconvenienced by requiring us to expend numerous hours communicating with attorneys in defending the Minnesota and South Dakota lawsuits.

52. We have been required to retain local counsel to defend us in the Minnesota and South Dakota lawsuits filed by Keith and his attorneys, and in an effort to stop Keith from further harassment and further attempts to collect from us a debt discharged through our bankruptcy, we have been required to seek legal assistance and to retain counsel in Illinois.

53. As a result, we have paid legal fees and expenses, and incurred mileage expenses, to date, as follows:

   a. $4,417.42 paid to Joseph A. Gangi, Farrish Johnson Law Office, 1907 Excel Drive, Mankato, MN 56001 for our representation in the Minnesota lawsuit; and

   b. $5,300.00 paid through July 30, 2019, to Michael E. Unke, Attorney at Law, 341 North Main, P.O. Box 529, Salem, SD 57058-0529 for our representation in the

South Dakota lawsuit. The South Dakota lawsuit is ongoing and Mr. Unke's fees and costs continue to accrue;

  c. $49.05 incurred in mileage for three meetings with Christina Banyon (30 miles RT x 3 trips at 54.5 cents per mile); and

  d. $44.08 incurred in mileage for meeting with Sulaiman Law Group (76 miles RT at 58.0 cents per mile).

54. In an effort to stop Keith from further harassment and further attempts to collect from us a debt that was discharged through our Chapter 7, we retained the legal services of Sulaiman Law Group. This matter is ongoing and Sulaiman Law Group's fees and costs continue to accrue.

55. I have been required and continue to be required to spend numerous hours compiling information and documentation, and in communications with Sulaiman Law Group.

56. Tina and I are seeking actual damages in the amount of:

  a. $9,717.42 in attorneys' fees and costs paid to date for legal representation in the Minnesota and South Dakota lawsuits;

  b. $93.13 in mileage expenses incurred to date to meet with attorneys in Illinois;

  c. Additional legal fees and costs associated with the ongoing South Dakota lawsuit; and

  d. Attorneys' fees and costs in this case, which continue to accrue.

57. Tina and I are also seeking damages for emotional distress and punitive damages in an amount to be determined.

Further, your affiant sayeth naught.

Dated this 1st day of August, 2019.

_____
Steven Lee Sorensen

Subscribed and sworn to before me
this 1st day of August, 2019.

_____
Notary Public, State of Illinois

OFFICIAL SEAL
IRMA LAURA GUERRERO
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:05/09/21

My Commissions Expires: May 9, 2021

7