IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In Re:

|  |  |  |
|---|---|---|
| STEVEN LEE SORENSEN,<br>TINA L. SORENSEN, | * <br> * <br> * <br> * <br> * <br> * | Case No. 11-bk-33448<br>Honorable Pamela S. Hollis<br>(Joliet City Hall, 2nd Floor) |
| Debtor(s) | * <br> * <br> * <br> * | Chapter 7 |

---

## EICH LAW OFFICE, PROF. LLC'S RESPONSE TO DEBTORS' MOTION PURSUANT TO 11 U.S.C. SECTIONS 524 AND 105 FOR VIOLATIONS OF THE DISCHARGE INJUNCTION AND FED.R.BANKR.P. 9020 SEEKING SANCTIONS FOR CIVIL CONTEMPT AGAINST KEITH A. SCHALLENKAMP, PAULSON LAW FIRM, PLLC, AND EICH LAW OFFICE, PROF. LLC

COMES NOW Robin M. Eich, of Eich Law Office, Prof. LLC, pursuant to the Corrected Order dated August 9, 2019, in response to the Debtors' Motion Pursuant to 11 U.S.C. sections 524 and 105 for Violations of the Discharge Injunction and Fed.R.Bankr.P. 9020 Seeking Sanctions for Civil Contempt Against Keith A. Schallenkamp, Paulson Law Firm, PLLC, and Eich Law Office, Prof. LLC (hereinafter cited "Debtors' Motion") filed in the above shown cause on May 31, 2019, and states as follows:

### STATEMENT OF FACTS

1. This Court has jurisdiction over this proceeding, which arises in a case under the Bankruptcy Code and concerns claims against Keith A. Schallenkamp, Paulson Law Firm, PLLC, and Eich Law Office, Prof. LLC, pursuant to 28 U.S.C. § 1334. This proceeding is a core proceeding.

2. Debtors filed their petition for relief under Chapter 7 of Title 11 of the United States

1

Code on August 16, 2011, in the above shown case number.

3.  Keith A. Schallenkamp was listed as an unsecured creditor in the case herein.

4.  On July 31, 2012, Debtors received a discharge of all dischargeable debts pursuant to 11

U.S.C. Sec. 727.

5.  Keith A. Schallenkamp ("Schallenkamp") retained Eich Law Office, Prof. LLC ("Eich")

to represent him in a civil matter in McCook County, South Dakota.

6.  Eich is a single member professional limited liability company organized under the laws

of the State of South Dakota.  Robin M. Eich, an attorney licensed to practice in the State of

South Dakota, is the Operating Manager and sole member of Eich.

7.  On May 31, 2019, Debtors filed the Debtors' Motion.

8.  Debtors' Motion seeks sanctions against Eich Law Office, Prof. LLC pursuant to

Fed.Bankr.P. 9020 for Civil Contempt.

## RESPONSE OF EICH LAW OFFICE, PROF. LLC

9.  Paragraph 1 of the Debtors' Motion states, "The Court has subject matter jurisdiction

over this proceeding pursuant to 11 U.S.C. §§ 105, 524, and 28 U.S.C. §§ 157 and 1334.  This

proceeding arises out of and is related to the above-captioned Chapter 7 case under Title 11."

Eich Law Office, Prof. LLC believes that Paragraph 1 of the Debtors' Motion requires no

response; should it need to be answered, Eich Law Office, Prof. LLC admits that the Court has

subject matter jurisdiction over this proceeding pursuant to 11 U.S.C. §§ 105, 524, and 28 U.S.C.

§§ 157 and 1334 and that this proceeding arises out of and is related to the above-captioned

Chapter 7 case under Title 11.

10. Paragraph 2 of the Debtors' Motion states, "This is a core proceeding within the meaning

of 28 U.S.C. §§ 157(b)(1) & (2)."  Eich believes that Paragraph 2 of the Debtors' Motion

requires no response; should it need to be answered, Eich admits that this is a core proceeding

within the meaning of 28 U.S.C. §§ 157(b)(1) & (2).

11. Paragraph 3 of the Debtors' Motion states, "Steven Lee Sorensen and Tina L. Sorensen

were debtors under Chapter 7 of Title 11 of the United States Code in Case Number 11-33448

filed on August 8, 2011, in the Bankruptcy Court for the Northern District of Illinois, Eastern

Division." Eich believes that Paragraph 3 of the Debtors' Motion requires no response; should it

need to be answered, Eich admits that Steven Lee Sorensen and Tina L. Sorensen were debtors

under Chapter 7 of Title 11 of the United States Code in Case Number 11-33448 filed on August

8, 2011, in the Bankruptcy Court for the Northern District of Illinois, Eastern Division.

12. Paragraph 4 of the Debtors' Motion states, "Keith A. Schallenkamp ("Schallenkamp") is

over the age of 18 and a resident of Sibley County, Minnesota with a last known mailing address

of 36 North 6th Street, Mankato, Minnesota 56001. Schallenkamp was an unsecured creditor in

the Debtors' Chapter 7 bankruptcy." Eich Law Office, Prof. LLC believes that Paragraph 4 of

the Debtors' Motion requires no response; should it need to be answered, Eich admits that Keith

A. Schallenkamp ("Schallenkamp") is over the age of 18 and a resident of Sibley County,

Minnesota with a last known mailing address of 36 North 6th Street, Mankato, Minnesota 56001.

Schallenkamp was an unsecured creditor in the Debtors' Chapter 7 bankruptcy.

13. Paragraph 5 of the Debtors' Motion states, "Paulson Law Firm PLLC ("Paulson") is an

inactive Limited Liability Company organized under the laws of the State of Minnesota with its

principal office located at 1434 Appaloosa Trail, Eagan, Minnesota 55122. Jon E. Paulson,

owner, is an attorney authorized to practice law in the State of Minnesota." Eich lacks

knowledge of Paragraph 5 of the Debtors' Motion and neither admits nor denies the same.

14. Paragraph 6 of the Debtors' Motion states, "Eich Law Office, Prof. LLC ("Eich") is an

Limited Liability Company organized under the laws of the State of South Dakota with its

principal office located at 210 N. Main Avenue, Suite 102, Parker, SD 57053 (mailing address

and second location: 700 N. Vandemark Avenue, Suite 108, Hartford, SD 57033). Robin M.

Eich, owner, is an attorney authorized to practice law in the State of South Dakota." Eich Law

Office, Prof. LLC admits the same and that Robin M. Eich, owner, is an attorney authorized to

practice law only in the State of South Dakota.

15. Paragraph 7 of the Debtors' Motion states, "On October 14, 2009, Sorensen filed a

wrongful termination lawsuit against his former employer, MF Global, and others (*Sorensen v.*

*Greg Arenson, et al.,* Cook County Circuit Court, Law Division, Case Number 2009-L-

012205)." Eich Law Office, Prof. LLC is without sufficient information to admit or deny as to

the date of the filing of a wrongful termination lawsuit, to wit on October 14, 2009, but admits

that Sorensen filed a wrongful termination lawsuit against his former employer, MF Global, and

others.

16. Paragraph 8 of the Debtors' Motion states, "Prior to the filing of his wrongful termination

lawsuit, Schallenkamp called Sorensen asking about the wrongful termination lawsuit and

expressed a desire to loan money to Sorensen in exchange for a stake in the lawsuit." Eich lacks

actual knowledge of the allegations other than what Schallenkamp has disclosed and what was

obtained through discovery of the South Dakota civil lawsuit, after the

commencement of the lawsuit.

17. Paragraph 9 of the Debtors' Motion states, "On June 27, 2011, Sorensen's wrongful

termination lawsuit was dismissed with prejudice. Sorensen filed an appeal on July 27, 2011.

During the pendency of the wrongful termination lawsuit and appeal, Sorensen's former

employer, MF Global, was facing a massive liquidity crisis which lead to MF Global filing for

4

Chapter 11 bankruptcy protection on October 31, 2011." Eich is without sufficient knowledge or information to admit or deny the specifics on June 27, 2011, Sorensen's wrongful termination lawsuit was dismissed with prejudice; that Sorensen filed an appeal on July 27, 2011; and that during the pendency of the wrongful termination lawsuit and appeal, Sorensen's former employer, MF Global, was facing a massive liquidity crisis which lead to MF Global filing for Chapter 11 bankruptcy protection on October 31, 2011. Eich lacks actual knowledge of the allegations other than what Schallenkamp has disclosed and what was obtained through discovery of the South Dakota civil lawsuit, after the commencement of the lawsuit.

18. Paragraph 10 of the Debtors' Motion states, "Between approximately July 2009 and August 5, 2011, Schallenkamp loaned Debtors approximately $72,084.00." Eich admits Paragraph 10 of the Debtors' Motion based upon information that Schallenkamp has disclosed and what was provided through discovery in the South Dakota civil lawsuit.

19. Paragraph 11 of the Debtors' Motion states, "On August 16, 2011, Debtors filed their Chapter 7 bankruptcy." Eich admits that on August 16, 2011, Debtors filed their bankruptcy.

20. Paragraph 12 of the Debtors' Motion states, "Debtors duly scheduled Schallenkamp as an unsecured creditor for a personal loan ("loan") on Schedule F." Eich admits that debtors duly scheduled Schallenkamp as an unsecured creditor for a personal loan ("loan") on Schedule F.

21. Paragraph 13 of the Debtors' Motion states, "Schallenkamp received notice of Debtors' Chapter 7 filing at his last known address through a notice produced by the Bankruptcy Noticing Center ("BNC"). Eich denies that Schallenkamp received notice based upon information and documentation that Schallenkamp has disclosed in regards to not receiving said notice as it was sent to an incorrect mailing address and discovery throughout the South Dakota civil lawsuit and discovery. It is believed that Debtors intentionally used an incorrect address for Schallenkamp

5

and continued to make promises to Schallenkamp that Debtors would repay Schallenkamp.
Debtors also asked Schallenkamp for additional monies to be loaned to them, while attempting to
discharge the money Schallenkamp had previously loaned to them.

22. Paragraph 14 of the Debtors' Motion states, "Approximately a week or two after the
notices were sent to creditors, Schallenkamp called Sorensen, furious about being listed in the
Debtors' bankruptcy.  Sorensen explained that Debtors were required to list every person or
creditor owed money by the Debtors."  Eich lacks actual knowledge of the allegation other than
what Schallenkamp has disclosed.  Eich has information and knowledge to believe that
Schallenkamp did not receive proper or adequate notice of the bankruptcy filing or discharge.

23. Paragraph 15 of the Debtors' Motion states, "On September 9, 2011, the BNC, at the
request of the Chapter 7 Trustee, produced notices to all creditors setting the time for filing
claims."  Eich lacks actual knowledge of the allegation other than what Schallenkamp has
disclosed.  Schallenkamp repeatedly indicated that he never received any notification of the
bankruptcy and then later discovered that only a portion of the debt had been discharged.

24. Paragraph 16 of the Debtors' Motion states, "Schallenkamp did not participate in
Debtors' bankruptcy case."  Eich lacks actual knowledge of the allegation other than what
Schallenkamp has disclosed. Specifically, Schallenkamp repeatedly indicated that he never
received any notification of the bankruptcy and then later discovered that only a portion of the
debt had been discharged.

25. Paragraph 17 of the Debtors' Motion states, "Debtors' Chapter 7 was a no-asset
bankruptcy and on June 26, 2012, the Chapter 7 Trustee issued his Report of No Distribution
stating:

"I, Bradley J. Waller, having been appointed trustee of the estate above-named debtor(s),
report that I have neither received any property nor paid any money on account of this

6

estates; that I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and *that there is no property available for distribution from the estate over and above that exempted by law*…Assets Abandoned (without deducting any secured claims): $201,874.57, Assets Exempt: $42800.00, Claims Scheduled: $1020314.69, Claims Asserted: Not Applicable, Claims scheduled to be discharged without payment (without deducting the value of collateral or debts excepted from discharge): $1020314.69." [Emphasis added.]"

Eich is without sufficient information or believe that Debtors' Chapter 7 was a no-asset

bankruptcy and on June 26, 2012, the Chapter 7 Trustee issued his Report of No Distribution.

26. Paragraph 18 of the Debtors' Motion states, "On July 31, 2012, Debtors received a

discharge of all dischargeable debts pursuant to 11 U.S.C. §727, including the subject loan."

Eich denies that on July 31, 2012, Debtors received a discharge of all dischargeable debts

pursuant to 11 U.S.C. §727, including the full amount of the subject loan, with the exception of

the monies loaned to Debtors by Schallenkamp after the initial filing of the bankruptcy based

upon information and documentation that Schallenkamp has disclosed. Debtors did not provide

adequate notice nor did they have the accurate amounts of the loan on the bankruptcy paperwork.

27. Paragraph 19 of the Debtors' Motion states, "On August 2, 2012, the BNC provided

Schallenkamp with notice of Debtors' Chapter 7 discharge." Eich lacks actual knowledge of the

allegation other than what Schallenkamp has disclosed and that is that Debtors did not provide

Schallenkamp with adequate notice or documentation pursuant to the bankruptcy rules.

28. Paragraph 20 of the Debtors' Motion states, "The Discharge Ordered served upon

Schallenkamp expressly stated:

"[t]he discharge prohibits any attempt to collect from the debtor a debt that has been discharged…a creditor is not permitted to contact a debtor by mail, phone, or otherwise…to collect a discharged debt from the debtor." *Id.*"

Eich lacks actual knowledge of the allegation other than what Schallenkamp has disclosed.

29. Paragraph 21 of the Debtors' Motion states, "Debtors' discharge extinguished any

liability on the subject loan and precluded any collection efforts against the Debtors by

Schallenkamp." Eich denies this allegation as money was loaned to Debtors by Schallenkamp

after the initial filing of the bankruptcy based upon information and documentation that

Schallenkamp has disclosed. Debtors intentionally failed to provide notice to Schallenkamp and

failed to inform Schallenkamp about the bankruptcy. They also enticed Schallenkamp to loan

additional monies to them despite Debtors knowing that they were filing for bankruptcy and had

filed for bankruptcy, with the intent to continue to receive money from Schallenkamp.

30. Paragraphs 22 through 25 of the Debtors' Motion concern a civil lawsuit that was filed in

District Court, First Judicial District, County of Sibley, State of Minnesota. Eich admits that said

civil lawsuit was filed and lacks actual knowledge of the particulars of the same and does not

feel that a response is applicable.

31. Paragraph 26 of the Debtors' Motion states, "Nevertheless, Schallenkamp again ignored

the Debtors' Discharge and on July 29, 2018, Schallenkamp, by and through his attorney, Robin

M. Eich, Eich Law Office, Prof. LLC, filed a civil lawsuit in Circuit Court, First Judicial Circuit,

County of McCook, State of South Dakota, seeking a judgment for damages against Debtors in

the amount of $71,304.00, plus interest, a judgment for fraud against Debtors in an amount to be

determined at trial, and attorney fees and costs ("the South Dakota lawsuit"). Schallenkamp is

specifically seeking to collect the $72,084.00 prepetition loan." Eich admits that a civil lawsuit

was filed in Circuit Court, First Judicial Circuit, County of McCook, State of South Dakota, and

that Schallenkamp did not receive notice of the filing of the bankruptcy and the amount

discharged was only $6,000 of the $72,084.00 that had been loaned.

32. Paragraph 27 of the Debtors' Motion states, "The South Dakota lawsuit mirrors the

Minnesota lawsuit filed by Schallenkamp against Debtors and dismissed only a few months prior

to Schallenkamp's filing of the South Dakota lawsuit." Eich lacks actual knowledge of the
particulars of the Minnesota lawsuit and does not feel that a response is applicable.

33. Paragraph 28 of the Debtors' Motion states, "In or about December 2018, Debtors met
with attorney Christina Banyon, CKB Lawyers, regarding Schallenkamp's lawsuits attempting to
collect a debt that was discharged in the Debtors' Chapter 13." Eich Law Office, Prof. LLC
lacks knowledge of any such meeting. Further, Eich is not aware of Debtors' Chapter 13
bankruptcy filing.

34. Paragraph 29 of the Debtors' Motion states, "On December 13, 2018, Ms. Banyon sent a
Notice Pursuant to Section 362 of the United States Bankruptcy Code of Automatic Stay
Protection and/or Past Filing of Bankruptcy to Robin Eich, along with copies of the Debtors' 341
notice and discharge order." Eich admits that said mailing was received, but lacks actual
knowledge of the sending of the same.

35. Paragraph 30 of the Debtors' Motion states, "Despite Ms. Banyon's efforts,
Schallenkamp and Eich proceeded with the South Dakota lawsuit." Eich denies that any action
taken was despite Ms. Banyon's efforts.

36. Paragraph 31 of the Debtors' Motion states, "At all times relevant prior to and including
the date of the filing of the South Dakota lawsuit, Schallenkamp had full knowledge of the
Debtors' no-asset Chapter 7 bankruptcy and Discharge of the subject loan and assisted his
attorney, Eich, in preparation of the South Dakota lawsuit which specifically referenced the
bankruptcy." Eich lacks actual knowledge of the allegations against Schallenkamp and does not
feel that a response is applicable.

37. Paragraph 32 of the Debtors' Motion states, "On the date of the filing of the South
Dakota lawsuit, Eich had full knowledge of the Debtors' no-asset Chapter 7 bankruptcy and

Discharge of the subject loan and with the assistance of Schallenkamp, in preparing and filing the lawsuit, brought the lawsuit against Debtors on the subject loan. Eich denies that it had "full knowledge" of Debtors' Chapter 7 bankruptcy and Discharge on the date of filing, as additional discovery was commenced and new information was made available after said date.

38. Paragraph 33 of the Debtors' Motion states, "With full knowledge of the Debtors' Chapter 7 discharge of the subject loan, Schallenkamp and Eich continued to actively pursue collection from the Debtors of the discharged subject loan through the South Dakota lawsuit." Eich Law Office, Prof. LLC again denies Eich having full knowledge of Debtors' Chapter 7 bankruptcy. Further, Eich denies this allegation as money was loaned to Debtors by Schallenkamp after the initial filing of the bankruptcy based upon information and documentation that Schallenkamp has disclosed.

39. Paragraph 35 of the Debtors' Motion states, "Debtors have been required to retain counsel to defend them in the Minnesota and South Dakota lawsuits filed by Schallenkamp and his attorneys, Paulson and Eich, respectively." Eich denies this allegation.

40. Paragraphs 36 through 41 are missing from Debtors' Motion and cannot be responded to.

41. Paragraph 42 of the Debtors' Motion states, "Concerned about the violation of their rights and invasion of their privacy, Debtors sought the assistance of counsel, Christina Banyon, to cease the collection efforts of Schallenkamp, Paulson and Eich." Eich lacks actual knowledge of the Debtors' actions and does not feel that a response is applicable.

42. Paragraph 43 of the Debtors' Motion states, "When her efforts failed, Ms. Banyon referred the Debtors to the undersigned counsel for assistance to cease the collection efforts of Schallenkamp, Paulson, and Eich." Eich lacks actual knowledge of the Ms. Banyon's actions and does not feel that a response is applicable.

43. Eich Law Office, Prof. LLC denies each and every other allegation as stated in Debtors' Motion except as specifically admitted or denied.

## ARGUMENT

44. As an attorney duly licensed to practice law in the State of South Dakota, Eich is required to uphold the South Dakota Rules of Professional Responsibility ("Rules") as adopted by the South Dakota Supreme Court. See Exhibit 1, a partial copy of the Rules, attached hereto and incorporated herein as if fully set forth.

45. Specifically, and as relevant to the case matter herein, Eich must adhere to Rule 1.2, which provides:

"**Rule 1.2. Scope of Representation and Allocation of Authority Between Client and Lawyer.** (a) Subject to paragraphs (c) and (d), a lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter…; (b) A lawyer's representation of a client, including representation by appointment, does not constitute an endorsement of the client's political, economic, social or moral views or activities.; (c) A lawyer may limit the scope of representation if the limitation is reasonable under the circumstances and the client gives informed consent; and (d) A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law."

46. Schallenkamp contacted Eich Law Office, Prof. LLC in regards to monies loaned by him to Debtors and a possible civil action that he felt was appropriate against Debtors and Shirley Schallenkamp. Upon the initial consultation, Eich advised Schallenkamp that he should retain an attorney who handles bankruptcy law in the Northern Division of Illinois to assist him via that route. Schallenkamp was adamant that he wanted to file a civil lawsuit in South Dakota and that he was not given proper notice of the bankruptcy and that there were discrepancies in the bankruptcy documents that he received. Schallenkamp indicated that he needed representation to

11

assist him in obtaining additional discovery and possible repayment of monies loaned to Debtors.

A lawsuit was filed and discovery commenced.  Schallenkamp indicated he had limited

knowledge in what had taken place with the bankruptcy as he had not received adequate or

timely documentation.  Schallenkamp wanted the civil lawsuit to be commenced as quickly as

possible as his father had recently died and Debtors' mother, Schallenkamp's stepmother, had

received a substantial distribution from the Estate.  Schallenkamp felt he could collect on the

money.  In representing Schallenkamp, Eich Law Office, Prof. LLC was well within the scope of

the Rules and Rule 1.2 in particularity.

47. Rule 1.4 of the Rules that Eich must also abide by can be applied to this matter as well:

"**Rule 1.4. Communication.** (a) A lawyer shall: (1) promptly inform the client of any
decision or circumstance with respect to which the client's informed consent, as defined in
Rule 1.0(e), is required by these Rules; (2) reasonably consult with the client bout the means
by which the client's objectives are to be accomplished; (3) keep the client reasonable
informed about the status of the matter; (4) promptly comply with reasonable requests for
information; and (5) consult with the client about any relevant limitation on the lawyer's
conduct when the lawyer knows that the client expects assistance not permitted by the Rules
of Professional Conduct or other law; (b) A lawyer shall explain a matter to the extent
reasonably necessary to permit the client to make informed decisions regarding the
representation…"

48. Upon receipt of the aforementioned letter dated December 13, 2018, from Christina

Banyon, Eich forwarded it to Schallenkamp via email, within twelve hours of its receipt, and

informed him that she had several concerns about his case and some of the causes of action that

should be dismissed.  See Exhibit 2, a copy of said email.  During this time, discovery regarding

the bankruptcy documentation and alleged fraud had commenced so a determination of all

monies loaned and the timing of the same was being made.  Eich continued to advise

Schallenkamp that he needed to contact an attorney in Illinois that handles bankruptcies as Eich

has never handled a bankruptcy and had knowledge on the bankruptcies.  As discovery was

being exchanged with Schallenkamp, Schallenkamp was reaching out to an Illinois bankruptcy

attorney in regards to his concerns of not receiving notification of the bankruptcy and the

amounts being incorrect ($6,000 rather than $72,084.00), to name just two of his concerns.

49. Discovery continued to transpire and communications regarding post-bankruptcy monies

loaned to Debtors by Schallenkamp ensued with Debtors' South Dakota attorney, Michael E.

Unke ("Unke"). Unke had been informed both verbally and in written correspondence that

Schallenkamp was no longer pursuing the monies loaned to Debtors after the filing of the

Chapter 7 bankruptcy and said communications included the intent to no longer pursue the pre-

bankruptcy amounts and the lowered demands of Schallenkamp for post-bankruptcy loans,

interest, and costs. See Exhibits 3 and 4, copies of letters sent to Unke. The post-bankruptcy

amount loaned by Schallenkamp to Debtors was at the agreed-upon amount of thirty-six percent

(36%) interest, which was never disputed in the civil lawsuits. The interest had continued to

accrue and had reached a substantial amount. A spreadsheet showing the money loaned after the

bankruptcy plus interest was set forth and enclosed. A proposed Release and Settlement

Agreement and Stipulation to Dismiss were also provided to Debtors' attorney. It did not

include any monies discharged in the bankruptcy. It was specifically addressed in the letters on

how the amounts were computed and the amounts did not include the amounts that had been

discharged in the bankruptcy proceeding despite Schallenkamp continue to believe that he did

not receive adequate notice of the bankruptcy proceeding and that only a partial amount of the

debt was discharged.

50. "A debt is excepted from discharge if it was not scheduled in time to permit timely action

by the creditor to protect its rights." Collier on Bankruptcy, Section 523.09(1)(2009). If a debt

has not been schedule in time for a creditor to seek a determination of dischargeability under

section 523(a)(2), (a)(4) or (a)(6), and the debt of the kind specified in any of those sections, the

debt is nondischargeable." Collier on Bankruptcy, Section 523.09(1)(2009). In this matter, the

debt was not listed for the correct amount and Debtors intentionally sent the bankruptcy

notification to an incorrect address.

51. A Motion to Dismiss Monies Loaned and Subsequently Discharged through the

Bankruptcy Proceedings was filed in the South Dakota civil matter, which is attached as Exhibit

5. A hearing has not yet been set on this motion due to the Debtors' Motion being filed and

taking precedence over the South Dakota civil matter.

52. Eich's actions complied with the Rules that she is required to uphold. She advised

Schallenkamp of her concerns and abided by his decisions concerning the South Dakota civil

matter. In addition, Eich maintained communication with Schallenkamp throughout discovery

and correspondence with Unke. Eich Law Office, Prof. LLC is not liable for any alleged

violations of the discharge injunction and should not be sanctioned for civil contempt. Eich has

never handled a bankruptcy nor is Eich aware of bankruptcy procedures.

53. Debtors failed to state a correct amount of the debt being discharged and failed to provide

adequate notice to Schallenkamp in that they intentionally used an incorrect address, the debt

was not discharged pursuant to the rules of bankruptcy. Collier on Bankruptcy, Section 2002.20

(2009) citing Foge V. Zell, 221 F.3d 955, 964 (7th Circuit, 2000);

54. Eich Law Office, Prof. LLC did not violate the discharge order.

55. It was in violation of Schallenkamp's due process rights not to be provided adequate

notice of the bankruptcy matter. In Re: Chance Industries, 708 B.R.689, 708 (B.D.Ken, 2006).

WHEREFORE, Eich Law Office, Prof. LLC respectfully prays for the following relief:

1. That the Debtors' Motion Pursuant to 11 U.S.C. sections 524 and 105 for Violations of

the Discharge Injunction and Fed.R.Bankr.P. 9020 Seeking Sanctions for Civil Contempt

Against Keith A. Schallenkamp, Paulson Law Firm, PLLC, and Eich Law Office, Prof.

LLC be dismissed in its entirety with prejudice;

2. For any and further relief as this court deems met and just.

Dated this 28th day of August, 2019.

EICH LAW OFFICE, PROF. LLC

By: /s/ Robin M. Eich
    Robin M. Eich
    700 N. Vandemark Ave., Ste. 108
    Hartford, SD 57033
    Telephone: (605) 528-3000
    Facsimile: (605) 528-3001
    Email: Robin@eichlawoffice.com
    *Appearing Pro Se*

## AFFIRMATIVE DEFENSES

56. Eich reaffirms its answers set forth above as numbers 1-55.

57. Eich argues that the doctrine of equitable estoppel can be used if: "(1) the party to be estopped is aware of the facts; (2) the party to be estopped intended it act of omission to be acted upon; (3) the party asserting estopped did not have knowledge of the facts; and (4) the party asserting estopped reasonably relied on the conduct of the other party to his or her own substantial injury." In Re Parker, 264 B.R. 685, 692 (B.A.P. 10th Circuit, 2001). Debtors knew that they had filed for bankruptcy and continued to ask Schallenkamp for additional monies to be paid to them. Debtors never informed Schallenkamp of their bankruptcy proceeding and intentionally sent the notice to an incorrect address. Debtors continued to promise Schallenkamp that they would repay him. It was part of this enticement and promises that enticed Schallenkamp to provide additional money to Debtors. Eich alleges all affirmative defenses.

EICH LAW OFFICE, PROF. LLC

By: /s/ Robin M. Eich
    Robin M. Eich
    *Appearing Pro Se*

# REVISION OF SOUTH DAKOTA
# RULES OF PROFESSIONAL RESPONSIBILITY

Adopted by the South Dakota Supreme Court
September 29, 2003
SC Rule 2003-26

## Rule 1.0. Terminology

(a)   "Belief" or "believes" denotes that the person involved actually supposed the fact in question to be true. A person's belief may be inferred from circumstances.

(b)   "Confirmed in writing," when used in reference to the informed consent of a person, denotes informed consent that is given in writing by the person or a writing that a lawyer promptly transmits to the person confirming an oral informed consent. See paragraph (e) for the definition of "informed consent." If it is not feasible to obtain or transmit the writing at the time the person gives informed consent, then the lawyer must obtain or transmit it within a reasonable time thereafter.

(c)   "Firm" or "law firm" denotes a lawyer or lawyers in a law partnership, professional corporation, sole proprietorship or other association authorized to practice law; or lawyers employed in a legal services organization or the legal department of a corporation or other organization.

(d)   "Fraud" or "fraudulent" denotes conduct that is fraudulent under the substantive or procedural law of the applicable jurisdiction and has a purpose to deceive.

(e)   "Informed consent" denotes the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct.

(f)   "Knowingly," "known," or "knows" denotes actual knowledge of the fact in question. A person's knowledge may be inferred from circumstances.

(g)   "Partner" denotes a member of a partnership, a shareholder in a law firm organized as a professional corporation, or a member of an association authorized to practice law.

(h)   "Reasonable" or "reasonably" when used in relation to conduct by a lawyer denotes the conduct of a reasonably prudent and competent lawyer.

(i)   "Reasonable belief" or "reasonably believes" when used in reference to a lawyer denotes that the lawyer believes the matter in question and that the circumstances are such that the belief is reasonable.

(j)   "Reasonably should know" when used in reference to a lawyer denotes that a lawyer of reasonable prudence and competence would ascertain the matter in question.

(k)   "Screened" denotes the isolation of a lawyer from any participation in a matter through the timely imposition of procedures within a firm that are reasonably adequate under the circumstances to protect information that the isolated lawyer is obligated to protect under these Rules or other law.

(l)   "Substantial" when used in reference to degree or extent denotes a material matter of clear and weighty importance.

(m)   "Tribunal" denotes a court, an arbitrator in a binding arbitration proceeding or a legislative body, administrative agency or other body acting in an adjudicative capacity. A legislative body, administrative agency or other body acts in an adjudicative capacity when a neutral official, after



the presentation of evidence or legal argument by a party or parties, will render a binding legal judgment directly affecting a party's interests in a particular matter.

(n)    "Writing" or "written" denotes a tangible or electronic record of a communication or representation, including handwriting, typewriting, printing, photostating, photography, audio or video recording and e-mail. A "signed" writing includes an electronic sound, symbol or process attached to or logically associated with a writing and executed or adopted by a person with the intent to sign the writing.

## Rule 1.1. Competence.

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

## Rule 1.2. Scope of Representation and Allocation of Authority Between Client and Lawyer.

(a)    Subject to paragraphs (c) and (d), a lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter . In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

(b)    A lawyer's representation of a client, including representation by appointment, does not constitute an endorsement of the client's political, economic, social or moral views or activities.

(c)    A lawyer may limit the scope of the representation if the limitation is reasonable under the circumstances and the client gives informed consent.

(d)    A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law.

## Rule 1.3. Diligence.

A lawyer shall act with reasonable diligence and promptness in representing a client.

## Rule 1.4. Communication.

(a)    A lawyer shall:

(1)    promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules;

(2)    reasonably consult with the client about the means by which the client's objectives are to be accomplished;

(3)    keep the client reasonably informed about the status of the matter;

(4)    promptly comply with reasonable requests for information; and

(5)    consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.

(b)    A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

(c)    If a lawyer does not have professional liability insurance with limits of at least $100,000, or if during the course of representation, the insurance policy lapses or is terminated, a lawyer shall promptly disclose to a client by including as a component of the lawyer's letterhead, using the following specific language, either that:

(1)    "This lawyer is not covered by professional liability insurance;" or

(2)    "This firm is not covered by professional liability insurance."

(d)    The required disclosure in 1.4(c) shall be included in every written communication with a client.

(e)    This disclosure requirement does not apply to lawyers who are members of the following classes: § 16-18-20.2(1),(3),(4) and full-time, in-house counsel or government lawyers, who do not represent clients outside their official capacity or in-house employment.


**Rule 1.5. Fees.**

(a)    A lawyer shall not make an agreement for, charge, or collect an unreasonable amount for fees or expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1)    the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2)    the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3)    the fee customarily charged in the locality for similar legal services;

(4)    the amount involved and the results obtained;

(5)    the time limitations imposed by the client or by the circumstances;

(6)    the nature and length of the professional relationship with the client;

(7)    the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8)    whether the fee is fixed or contingent.

(b)    The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate. Any changes in the basis or rate of the fee or expenses shall also be communicated to the client.

(c)    A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. A contingent fee agreement shall be in writing signed by the client and shall state the method by

**Robin M. Eich**

| | |
|---|---|
| **From:** | Robin M. Eich |
| **Sent:** | Friday, December 14, 2018 6:10 AM |
| **To:** | 'Keith Schallenkamp' |
| **Subject:** | FW: Steve Sorensen BK Filing |
| **Attachments:** | 12.13.18presanctionsletter.pdf |

Se the email below and the attached letter that I received last night.

I continue to have a lot of concerns on your case. I think the only cause of action that you should pursue is the money that was loaned after the bankruptcy filing. I think we should move to dismiss the other causes of action. Let me know your thoughts.

Robin M. Eich
Attorney and Counselor at Law
Eich Law Office, Prof. LLC

   Hartford Office:                    Parker Office:
700 N. Vandemark Ave., Suite 108    210 N. Main Avenue, Suite 102
Hartford, SD 57033                  P.O. Box 310
Phone:  (605) 528-3000              Parker, SD  57053
Facsimile:  (605) 528-3001          Phone: (605) 297-4809
Email:  Robin@eichlawoffice.com

CONFIDENTIALITY NOTICE - The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) names above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message and telephoning (605) 528-3000.

**From:** Christina Banyon [mailto:cbanyon.law@gmail.com]
**Sent:** Thursday, December 13, 2018 8:46 PM
**To:** Robin M. Eich
**Subject:** Steve Sorensen BK Filing

Please see attached from my office.

--



1



# EICH LAW OFFICE
*Attorneys and Counselors at Law*

February 3, 2019

Michael E. Unke
P.O. Box 529
Salem, SD 57058-0529

RE:   *Schallenkamp v. Sorensens and Schallenkamp; CIV. 18-56*

Dear Mike:

Pursuant to SDCL § 19-19-408, the following is protected as settlement discussions and cannot be used as evidence at trial. I have spoken with Keith Schallenkamp and it is our intention to try to reach a resolution to this matter.

As you are aware, Keith loaned money to Steven and Tina Sorensen at various points in time, some prior to the bankruptcy and some after their bankruptcy petition was filed. Mr. Schallenkamp acknowledges that he may have issues trying to collect on money that was loaned prior to the bankruptcy filing but the funds that were loaned after the bankruptcy should be paid in full. I have enclosed a spreadsheet, along with the corresponding documentation, showing our calculations of the money loaned, money repaid, and interest for the same as of January 11, 2019.

Keith has also paid a substantial amount in legal fees in trying to collect the money borrowed to the Sorensens over the years. If the Sorensens pay Keith a cash settlement of $50,000.00, we would agree to dismiss this case in its entirety. I have enclosed the proposed Release and Settlement Agreement and Stipulation to Dismiss that I have taken the liberty of preparing. Please let me know if your clients are agreeable to the same.

Sincerely,

Robin M. Eich
*Attorney and Counselor at Law*
*Sender's email: Robin@eichlawoffice.com*



EXHIBIT
3

Eich Law Office, Prof. LLC

Hartford Location
700 N. Vandemark Ave.
Suite 108
Hartford, SD 57033

P: 605-528-3000
F: 605-528-3001

Parker Location
210 N. Main Ave., Suite 102
PO Box 310
Parker, SD 57053

P: 605-297-4809

www.eichlawoffice.com

Letter to Michael E. Unke
Page 2 of 2
February 3, 2019

RME/smr
Enclosures
Cc: Keith Schallenkamp

2/3/2019

## Schallenkamp v. Sorensens and Schallenkamp; CIV. 18-56
### Plaintiff's Loan Payments Made to Defendants/Repayments Received by Plaintiff After Bankruptcy Filing

| Date of Loan/Payment/ Year | Loan Payment Made by Plaintiff | Form of Payment Made by Plaintiff/Defendants/Interest | Payment Received by Plaintiff | Balance Due to Plaintiff (Principal + Interest Per Year) |
|---|---|---|---|---|
| 9/6/2011 | $500.00 | Bill Pay | | $500.00 |
| 9/27/2011 | $500.00 | Bill Pay | | $1,065.78 |
| 11/2/2011 | $500.00 | Bill Pay | | $1,739.20 |
| 11/19/2011 | $800.00 | Bill Pay | | $2,763.45 |
| 12/15/2011 | $230.00 | Wire Transfer | | $3,295.44 |
| 1/2/2012 | $500.00 | Bill Pay | | $4,151.25 |
| 01/03/12-12/31/12 | | Interest | | $5,595.42 |
| 01/01/13-12/31/13 | | Interest | | $8,130.94 |
| 01/01/14-06/03/14 | | Interest | | $11,126.92 |
| 6/3/2014 | | Wire Transfer | $1,000.00 | $10,126.92 |
| 06/04/14-08/05/14 | | Interest | | $13,311.27 |
| 8/5/2014 | | Check by Mail | $1,000.00 | $12,311.27 |
| 08/06/14-10/08/14 | | Interest | | $15,683.99 |
| 10/8/2014 | | Check by Mail | $700.00 | $14,983.99 |
| 10/09/14-01/16/15 | | Interest | | $18,655.71 |
| 1/16/2015 | | Check by Mail | $500.00 | $18,155.71 |
| 01/17/15-04/20/15 | | Interest | | $22,117.46 |
| 4/20/2015 | | Check by Mail | $600.00 | $21,517.46 |
| 04/21/15-01/03/18 | | Interest | | $21,614.38 |
| 01/03/18-02/28/19 | | Interest | | $29,707.07 |
| **Total:** | **$3,030.00** | | **$3,800.00** | **$29,707.07** |

Calculations:

36% / 365= 0.0009863

0.0009863 * $3,030.00 = $2.99 per day

09/06/2011-09/27/2011: 22 days
09/28/2011-11/02/2011: 36 days
11/03/2011-11/19/2011: 17 days
11/20/2011-12/15/2011: 26 days
12/16/2011-01/02/2012: 18 days
01/03/2012-12/31/2012: 364 days
01/01/2013-12/31/2013: 365 days

01/01/2014-06/03/2014: 154 days
06/04/2014-08/05/2014: 63 days
08/06/2014-10/08/2014: 63 days
10/09/2014-01/16/2015: 100 days
01/17/2015-04/20/2015: 97 days
04/21/2015-02/01/2019: 1,383 days

## RELEASE AND SETTLEMENT AGREEMENT

This Release and Settlement Agreement (the "Agreement") is entered into this _____ day of January, 2019, by and between **Keith Anthony Schallenkamp** ("Schallenkamp") and **Steven Sorensen and Tina Sorensen** (collectively as "Sorensens") and **Shirley Schallenkamp** ("Shirley").

WHEREAS, Schallenkamp loaned money to Sorensens from approximately July, 2009, to January, 2012;

WHEREAS, Sorensens filed a petition for bankruptcy in the Northern District of Illinois, thereby discharging a portion of the debt they owe to Schallenkamp;

WHEREAS, Schallenkamp continued to loan money to Sorensens after the above-referenced bankruptcy filing;

WHEREAS, the total amount as of February 1, 2019, that Sorensens owe Schallenkamp for the debt not discharged in bankruptcy and including payments made and interest accrued is twenty-nine thousand six hundred fourteen dollars and thirty-eight cents ($29,614.38), with interest continuing to accrue at a rate of two dollars and ninety-nine cents ($2.99) per day; and

WHEREAS, Schallenkamp has spent a substantial amount on legal fees in trying to collect on the debt owed to him.

NOW, THEREFORE, in consideration of the following covenants and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1.    <u>Release</u>.  Each party hereby releases, discharges, and covenants not to sue the other party with respect to any and all claims, rights, causes of action, suits, and demands whatsoever, in law and in equity, presently known or unknown, which the parties now have or previously had against the other party, which arise out of or are related to the transactions described in this agreement.

2.    <u>Monetary Settlement</u>.  Sorensens will pay to Schallenkamp a monetary settlement in the amount of fifty thousand dollars and no cents ($50,000.00) via a cashier's check made payable to the Eich Law Office, Prof. LLC Trust Account, 700 N. Vandemark Avenue, Suite 108, Hartford, South Dakota 57033.  Said payment shall be made within thirty (30) days of the signing of this Agreement.

3.    <u>Confidentiality</u>. Each party hereby agrees to keep this matter confidential and agrees not to discuss the matter beyond this agreement again, either with each other or third parties. All parties agree that no posting about the matter will be made on any type of social media platform.

4.    <u>Dismissal.</u>  The parties shall sign a mutual dismissal of the CIV. 18-56 lawsuit.

1

5.    <u>Modification</u>.  Any amendments to this agreement must be in writing and signed by both parties.

6.    <u>Binding Effect</u>.  This agreement is binding on the parties and their heirs, personal representatives, successors, and assigns.

7.    <u>Breach</u>.  It is understood and agreed that if one or more of a party's warranties and representations is untrue or becomes untrue, or if a party defaults in the performance or compliance with any term or condition hereof, the other party may resort to any and all legal remedies or combination of legal remedies allowed by law or equity.  The party in default agrees to pay all attorneys' fees and other costs and expenses incurred by the other party in enforcing any of the defaulting party's obligations under this agreement.

_____
Keith Anthony Schallenkamp

STATE OF MINNESOTA    )
                      :SS
COUNTY OF _____  )

On this the _____ day of February, 2019, before me, the undersigned officer, personally appeared Keith Anthony Schallenkamp, known to me or satisfactorily proven to be the person whose name is subscribed to the within instrument and acknowledged that he executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public – Minnesota
My Commission expires: _____

2

_____
Steven Sorensen

STATE OF ILLINOIS     )
                         :SS

COUNTY OF _____   )

     On this _____ day of February, 2019, before me, the undersigned officer, personally appeared Steven Sorensen known to me or satisfactorily proven to be the person whose name is subscribed to the within instrument and acknowledged that he executed the same for the purposes therein contained.

     IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public – Illinois
My Commission expires: _____

_____
Tina Sorensen

STATE OF ILLINOIS     )
                         :SS

COUNTY OF _____   )

     On this _____ day of February, 2019, before me, the undersigned officer, personally appeared Tina Sorensen known to me or satisfactorily proven to be the person whose name is subscribed to the within instrument and acknowledged that she executed the same for the purposes therein contained.

     IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public – Illinois
My Commission expires: _____

_____
Shirley Schallenkamp

STATE OF SOUTH DAKOTA   )
                                              :SS
COUNTY OF _____   )

      On this _____ day of February, 2019, before me, the undersigned officer, personally appeared Shirley Schallenkamp known to me or satisfactorily proven to be the person whose name is subscribed to the within instrument and acknowledged that she executed the same for the purposes therein contained.

      IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public – South Dakota
My Commission expires: _____

4

STATE OF SOUTH DAKOTA )
                      :SS
COUNTY OF McCOOK      )

IN CIRCUIT COURT

FIRST JUDICIAL CIRCUIT

KEITH ANTHONY SCHALLENKAMP,

      Plaintiff,

vs.

STEVEN SORENSEN, TINA SORENSEN,
AND SHIRLEY SCHALLENKAMP,

      Defendants.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

CIV. 18-56

STIPULATION TO DISMISS

COME NOW, Robin M. Eich, attorney for the Plaintiff, and Michael E. Unke, attorney for the Defendants, and move the Court to dismiss the above matter with prejudice in that an agreement has been reached between the parties and the parties have entered into a Release and Settlement Agreement, which will remain confidential and not be filed with the Court.

Dated this _____ day of February, 2019.

EICH LAW OFFICE, PROF. LLC

By: _____
    Robin M. Eich
    700 N. Vandemark Ave., Suite 108
    Hartford, SD 57033
    Telephone: (605) 528-3000
    Facsimile: (605) 528-3001
    Robin@eichlawoffice.com
    *Attorneys for Plaintiff*

UNKE LAW OFFICE

By: _____
    Michael E. Unke
    P.O. Box 529
    Salem, SD 57058
    Telephone: (605) 425-3131
    Facsimile: (605) 425-2977
    Unkelaw@hotmail.com
    *Attorney for Defendants*

1



# EICH LAW OFFICE

*Attorneys and Counselors at Law*

May 10, 2019

Michael E. Unke
P.O. Box 529
Salem, SD 57058-0529

RE:   *Schallenkamp v. Sorensens and Schallenkamp; CIV. 18-56*

Dear Mike:

I am in receipt of your letter and have discussed it with Keith Schallenkamp.  The Sorensens/Shirley Schallenkamp feel that the balance due is $200.40 but that does not take the full interest into consideration or allow for a reasonable settlement.

Keith has $2,800 being paid back.  Please provide us with proof of all payments made along with any other documentation that they have to support their defenses.  Perhaps that is where the numbers differ a bit.

A contract was entered into and Keith is adamant that the interest rate was agreed upon and is in compliance with the applicable laws.  Keith would like me to point out SDCL 54-3-1.1, which allows the contracted amount of interest to accrue on the note.  Keith is adamant that they owe a substantial amount more money and will continue to pursue it until either a reasonable settlement is reached or until a jury decides the amount due.  If this continues, he will keep pushing for attorney fees and costs to be paid by the Sorensens and Shirley.  They have now admitted that they owe money after the bankruptcy filing but have not paid it or made an attempt to pay it.

Keith may not be able to collect the amount that was discharged in bankruptcy, but there is still a substantial amount due even with the amount that was discharged.  He believes, based upon the situation and the applicable laws, that the Sorensens and/or Shirley will pay him a reasonable amount to settle it.  Keith doesn't care if they term it "cost of defense" money or if they agree with the amount that is due to him.



**EXHIBIT**

**4**

**Eich Law Office, Prof. LLC**

Hartford Location
700 N. Vandemark Ave.
Suite 108
Hartford, SD 57033

P: 605-528-3000
F: 605-528-3001

Parker Location
210 N. Main Ave., Suite 102
PO Box 310
Parker, SD 57053

P: 605-297-4809

www.eichlawoffice.com

Letter to Michael E. Unke
Page 2 of 2
May 10, 2019

We should be able to settle this matter without an excessive amount of more attorney fees
and costs.  Interest at the high rate continues to accrue so the sooner we can reach an
agreement the better or Keith will continue to demand the full interest as time progresses.

Keith again demands a cash settlement of $50,000.00.  He continues to strongly feel that
this is reasonable and what should in fact be paid.  Shirley received a substantial amount of
money so has the funds readily available to pay the settlement.

Sincerely,

Robin M. Eich
*Attorney and Counselor at Law*
*Sender's email: Robin@eichlawoffice.com*

RME/smr
Cc: Keith Schallenkamp

STATE OF SOUTH DAKOTA )
         :SS
COUNTY OF McCOOK   )

IN CIRCUIT COURT

FIRST JUDICIAL CIRCUIT

KEITH ANTHONY SCHALLENKAMP,

   Plaintiff,

vs.

STEVEN SORENSEN, TINA SORENSEN,
AND SHIRLEY SCHALLENKAMP,

   Defendants.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

CIV. 18-56

MOTION TO DISMISS MONIES LOANED
AND SUBSEQUENTLY DISCHARGED
THROUGH THE BANKRUPTCY
PROCEEDINGS

   COMES NOW Plaintiff, Keith Anthony Schallenkamp, by and through his attorney of record, Robin M. Eich, and moves the Court to dismiss all paragraphs of the Verified Complaint filed in the case matter herein regarding Defendants Steven Sorensen and Tina Sorensen's bankruptcy filing in the Northern District of Illinois and the subsequent discharge of the debt therein. Plaintiff's attorney had previously informed Defendants' attorney, Michael E. Unke, that Plaintiff was not going to pursue the debt that was discharged in bankruptcy but had not formally asked for that portion to be dismissed. Plaintiff continues to pursue the cause of action for the money that was loaned to Defendants after the bankruptcy filing.

   Dated this 7th day of June, 2019.

         EICH LAW OFFICE, PROF. LLC

    By: _____
       Robin M. Eich
       700 N. Vandemark Ave., Suite 108
       Hartford, SD 57033
       Telephone: (605) 528-3000
       Facsimile: (605) 528-3001
       Robin@eichlawoffice.com
       *Attorneys for the Plaintiff*

1

EXHIBIT
5